1999 OK CIV APP 1

**Robert E. CAMPBELL, Petitioner,**

v.

**CITY OF HOLLIS, State Insurance Fund, and the Workers' Compensation Court, Respondents.**

No. 90,738.

Court of Civil Appeals of Oklahoma, Division No. 2.

Oct. 20, 1998.

Rehearing Denied Nov. 30, 1998.

Sidney A. Musser, Jr. Harry J. Kouri III Abel, Musser, Sokolosky, Mares & Kouri, Oklahoma City, Oklahoma, For Petitioner.

Darren Derryberry, Victor Trautmann, Oklahoma City, Oklahoma, For Respondents.

*OPINION*

GOODMAN, P.J.

¶ 1  This is a proceeding to review an order of the Workers' Compensation Court awarding the claimant benefits for permanent partial disability, general equivalency degree skills training, and job placement services. The court denied the claim for permanent total disability benefits. Based upon our review of the record and applicable law, we sustain the order.

I

¶ 2  Claimant Robert Campbell filed his Form 3 January 5, 1996, alleging he injured his lower back, legs, and body, and sustained psychological overlay, while "loading water pump on truck; sharp pains through L. Back" during the course of his employment as a water department worker for employer City of Hollis, Oklahoma. The claimant filed a Form 9 October 21, 1997, seeking "PTD thru completion of VR; cont. weekly benefits pursuant to title 85 section 16 para. D."

¶ 3  The employer stipulated the claimant had suffered an accidental injury arising out of and in the course of his employment, and paid temporary total disability benefits from May 10, 1995, to September 26, 1997.

¶ 4  The trial court held a hearing on the matter December 16, 1997. The claimant sought benefits for permanent total disability and vocational rehabilitation or, in the alternative, permanent partial disability, psychological overlay, and medical maintenance costs. He testified that at the time of his injury, he was 46 years old and had worked as a farm laborer before his employment of "15, 16 years" with the employer, where he had worked "mostly digging water lines, sew-

er lines." He testified he continued to suffer restricted range of motion, and pain in his back and legs after "[w]alking too much, standing too much." He has not worked since his injury, is on pain medication, is unable to sit still more than a few minutes or drive more than 100 miles without pain, and suffers depression. On the other hand, the claimant expressed a willingness to accept employment, possessed a valid driver's license, and drove the family vehicle for short distances.

¶ 5 The claimant's medical expert concluded the claimant had sustained injury to the spinal nerve roots of the lumbosacral levels with disc derangement causing a 27 percent permanent partial impairment to the whole person, over and above a pre-existing 7 percent impairment from a previous back injury, plus 10 percent permanent impairment due to psychological overlay. As a result, the expert stated:

> Based on [the claimant's] injuries, as well as age, education, skills and training, it is my opinion that he is no longer employable and therefore, is considered 100% economically permanently totally disabled.

¶ 6 The employer's medical expert, on the other hand, stated the claimant had sustained 5 percent permanent partial impairment as a result of his most recent injury, had not sustained any impairment due to psychological overlay, "is not permanently and totally disabled based on his age, education, training, and work experience," and is not in need of vocational rehabilitation. He concluded the claimant "may return to employment he has performed in the past."

¶ 7 Both parties presented the court-approved Initial Vocational Evaluation, which noted the claimant had also worked for the employer as a backhoe operator, water meter installer, sewer line worker, sanitation truck driver, and laborer. The evaluator noted the claimant had left school in either the fifth or eighth grade, but is functionally illiterate, operating at the first and second grade level in reading, spelling, and mathematics. He stated:

> [The claimant] has worked all of his life in heavy and medium strength occupations.... Since he has driven some vehi-

cles in the past, he would have transferable skills to some light strength driving occupations such as floral delivery, messenger, courier, etc. These types of occupations would fit within his physical restrictions...." (Emphasis added.)

The evaluator also stated that the claimant "wished he could go back to school at the votech," but "[a]ll of the curriculum at the votech generally requires approximately a 9th grade level of performance for students to be successful." He noted, however, that "[c]urrently [the claimant] is functioning academically in the 1st and 2nd grade level in reading, spelling, and arithmetic. He is also unable to read. In order to enhance his employment prospects, he could benefit from acquiring his general equivalency degree (GED)...." (Emphasis added.)

¶ 8 In an order filed January 5, 1998, the trial court found, in pertinent part:

–1.–

That on May 10, 1995 ... claimant sustained accidental personal injury to the back arising out of and in the course of claimant's employment.

–2.–

That the claimant has sustained compensable psychological overlay due, in part, to pain disorder....

. . . .

–5.–

That the claimant is not permanently and totally disabled solely as a result of this accident.

–6.–

That as a result of said injury, claimant sustained 13 percent permanent partial disability to the body as a whole due to injury to the back (over and above seven percent pre-existing permanent partial disability to the back) and 4 percent permanent partial disability to the body as a whole due to psychological overlay....

. . . .

–8.–

That based upon the claimant's request for permanent partial disability benefits or permanent total disability benefits, the court rejects any demand made for active physical or psychological treatment is denied [sic].

–9.–

That the respondent is directed to provide claimant with general equivalency degree skills training plus job placement assistance at Southwest Technology Center. . . .

–10.–

That the claimant possesses transferrable skills and is capable of retraining to employment with job placement assistance.

¶ 9   The claimant seeks our review.

## II

¶ 10   The claimant contends the trial court erred as a matter of law by entering a premature finding regarding permanent total disability, and failing to award benefits pursuant to 85 O.S. Supp.1997, § 16(D), while the claimant is participating in court-ordered general equivalency degree skills training.

¶ 11   The employer correctly cites *Sohio Petroleum Co. v. Cotton*, 272 P.2d 383 (Okla.1954)(syllabus by the court), wherein the Oklahoma Supreme Court stated that the "cause and extent of a disability arising from an accidental injury are questions of fact to be determined by the [Workers' Compensation Court] and where there is any competent evidence reasonably tending to sustain the finding an award based thereon will not be disturbed on review."

¶ 12   Title 85 O.S. Supp.1997, § 3(15), defines "permanent total disability" as:

[I]ncapacity because of accidental injury . . . to earn any wages in any employment for which the employee may become physically suited and reasonably fitted by education, training or experience, including vocational rehabilitation. . . .

■ ¶ 13   The issue before the trial court was whether the claimant was either permanently partially disabled, or permanently totally disabled.   Competent evidence supports the trial court's adjudication that the claimant possesses "transferrable skills," "is capable of retraining to employment" and thus is not permanently totally disabled. Section 16(A) dictates that no person shall be adjudicated permanently and totally disabled without first having been evaluated as to restoration to gainful employment through vocational rehabilitation services or training.   The statute establishes a predicate to an award of permanent total disability benefits, not to the denial of such benefits.   We hold the finding that the claimant is not permanently and totally disabled is not premature and is supported by competent evidence.

■ ¶ 14   Furthermore, regarding the claimant's entitlement to benefits under § 16(D), we hold the claimant is not entitled to such benefits.   The statute authorizes a claimant to receive § 16(D) benefits when he "is actively participating in retraining or job placement program for purposes of evaluating permanent total disability status . . . ." The claimant's physical status has been judicially established as permanent partial disability.   The general equivalency degree skills training and job placement assistance ordered by the trial court are therefore not designed to evaluate permanent total disability, but to "enhance" the claimant's employment opportunities using the transferable skills he presently possesses.   It is undisputed that, according to the vocational evaluation, Campbell has the ability to perform some of his previous occupational duties, i.e., light strength or driving duties.

¶ 15   We hold the claimant's participation in the court-ordered services is not for the purpose of evaluating a claim for permanent total disability benefits, and therefore the claimant is not entitled to § 16(D) benefits during such participation.   See *Koch v. CRI Feeders*, 1998 OK CIV APP 114, 964 P.2d 948, 69 Okla. B.J. 2940.

## III

¶ 16   The order under review is supported by competent evidence, and is correct as a

matter of law. *Parks v. Norman Mun. Hosp.*, 1984 OK 53, 684 P.2d 548. Accordingly, the order is sustained.

¶ 17 ORDER SUSTAINED.

¶ 18 TAYLOR, C.J., and BOUDREAU, J., concur.